**The STATE of Texas, Relator,**

v.

**The Honorable Albert PRUETT, Judge, Respondent.**

**No. 94–1231.**

Supreme Court of Texas.

Argued March 23, 1995.

Decided June 15, 1995.

Rehearing Overruled July 21, 1995.

---

Steven Snelson, Dan Morales, Austin, for relator.

Michael G. Mullen, Michael W. Eady, Austin, Thomas H. Buchanan, Ken W. Good, Tyler, for respondent.

SPECTOR, Justice, delivered the opinion of the Court, in which all justices join.

■ Chapter 110 of the Texas Civil Practice and Remedies Code requires the State of Texas to provide indemnification for malpractice to doctors devoting at least ten percent of their practice to charity care. *See* TEX. CIV.PRAC. & REM.CODE § 110.002. In this proceeding, the State of Texas seeks mandamus relief from a trial court order applying the indemnity limits in section 110.004 of the Code on a per-physician basis. Because we agree with the trial court's construction of the statute, we deny the requested relief.

The claims underlying this dispute arose when Jeanie Johnigan died while giving birth. Her estate sued Loren Goss, the delivering physician, and Edmund Touma, the anesthesiologist, for malpractice. At the time, Goss held a $100,000 malpractice policy issued by Texas Medical Liability Insurance Underwriting Association, and Touma held an equivalent policy issued by Texas Medical Liability Trust. Each physician settled separately with the estate for the full $100,000 policy limit.

The insurers notified the State of the settlements and requested indemnity pursuant to Chapter 110 of the Code, which allows indemnity of up to $100,000 in cases arising as a result of care during labor and delivery. *See* TEX.CIV.PRAC. & REM.CODE § 110.004(a)(1). The State objected on the basis that it was liable for only $100,000, rather than the aggregate settlement amount of $200,000.

After a non-evidentiary hearing, the trial court overruled the State's objection, ordering it to indemnify the insurers for $100,000

each. The State now asks this Court to issue a writ of mandamus to the trial court directing that the State's total liability for indemnification be limited to $100,000, which must be divided between Goss and Touma.

Chapter 110 expressly provides for mandamus review of a trial court's order approving a settlement and ordering indemnification. *Id.* § 110.006(b). We review such an order only for an abuse of discretion by the trial court. *Id.*

■ Resolution of this dispute hinges on our interpretation of section 110.004(a) of the Texas Civil Practice and Remedies Code, which provides as follows:

State liability for indemnification under this chapter may not exceed:

(1) $100,000 for a single occurrence in the case of an eligible medical malpractice claim arising as a result of prenatal care, care during labor and delivery, and care given to a mother or infant during the 30–day period immediately following delivery, or as a result of emergency care; or

(2) $25,000 for a single occurrence in the case of any other eligible medical malpractice claim.

There is no dispute that this case falls under subsection (1), as the alleged malpractice occurred during delivery.

The State argues that the "single occurrence" language in subsection (1) caps its total liability at $100,000 per case, regardless of the number of liable physicians. Any other interpretation, the State asserts, would abolish the limitations established by the Legislature and render the "single occurrence" language meaningless. We disagree.

There are no reported decisions in Texas construing the liability limits in section 110.004(a). The more plausible reading of the statute, however, is that the $100,000 limit applies to any eligible medical malpractice claim against a health care provider. The phrase "single occurrence" caps the State's liability for indemnification at $100,-000 or $25,000 per occurrence for each health care provider. Thus, in the present case, the $100,000 limit applies independently to the two separate malpractice claims brought by

Johnigan's estate. This construction is consistent with the language of the statute, its legislative history, and practical considerations concerning its implementation.

By its terms, section 110.004(a) imposes a $100,000 indemnity limit for a single occurrence in the case of "*an* eligible medical malpractice claim" arising from certain types of care. If the Legislature had intended the limit to apply to all claims arising from the occurrence, it could have referred to "eligible medical malpractice claims" in the plural. The use of the singular suggests that the limit applies to each claim rather than to the aggregate of all claims.

This interpretation is supported by the legislative history of chapter 110. The statute was enacted in 1989 as part of House Bill 18, the Omnibus Health Care Rescue Act. 71st Leg., R.S., ch. 1027, § 17, 1989 Tex.Gen. Laws 4128, 4136. House Bill 18 was evidently intended, in part, to encourage physicians and other health care professionals to provide charity care. With its creation of chapter 110, the Legislature authorized "state indemnification for the provision of charity care or services." *Id.*, caption at 4128. As an additional incentive, House Bill 18 mandated reductions in professional liability insurance premiums for health care professionals providing charity care or services in ten percent or more of their patient encounters. *Id.* § 18, at 4138–39 (enacting Tex.Ins.Code art. 5.15–4). The premium discount must "reflect the reduction in the insurer's liability exposure based on the state's indemnification of the first $100,000 or $25,000 under Chapter 110, Civil Practice and Remedies Code, of an eligible malpractice claim against a health care professional, health center, or health clinic." Tex.Ins.Code art. 5.15–4, § 3. Because insurance companies must grant this reduction to each qualifying doctor, *id.* § 7, the Legislature must have intended for each doctor to receive the full indemnity, regardless of whether he or she is sued jointly with other health care providers.

The State's construction of section 110.004(a) would be inconsistent with the premium discount provisions in the Insurance Code, and would pose practical difficulties as well. Chapter 110 provides no guidance as to how to divide the $100,000 among the health care providers eligible for indemnification under the statute. Absent such guidance, the statute would encourage litigation among health care providers and their insurers, thwarting the Legislature's evident intent to promote settlements. *See* Tex.Civ. Prac. & Rem.Code §§ 110.002, 110.005(2), 110.006.

We conclude that the indemnity limits in section 110.004(a) apply on a per-health-care-provider basis. Accordingly, the writ of mandamus is denied. Because of this disposition, we need not reach the issue of whether the State waived its objection to the settlements.